STATE OF CONNECTICUT *v.* CYRUS TAHERI
(13821)

Landau, Heiman and Spear, Js.

Argued December 12, 1995—decision released April 23, 1996

*Elizabeth M. Inskter*, assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Donald A. Browne*, state's attorney, and *Linda N. Howe*, assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48[1] and 53a-134.[2] The defendant claims that the judgment should be reversed because the trial court, in its jury charge, (1) failed to give an accomplice testimony instruction, (2) improperly instructed on the duty to draw inferences, and (3)

---

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-134 provides in pertinent part: "(a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."

General Statutes § 53a-133 provides: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

failed to relate the law to the facts of the case. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. In November, 1990, the defendant was hired to serve as assistant manager of a Popeye's fast-food restaurant in Stratford. Edward Cooper and Christopher Florentino were also employees of Popeye's and worked under the supervision of the defendant.

In February, 1991, the defendant stated to Cooper that the restaurant would be easy to rob. He stated that if they could find an outside person to come into the restaurant at the appropriate time to commit the actual robbery, it could be easily accomplished. Subsequently, the defendant had the same conversation with Florentino, and, on several occasions, the three individuals discussed how the robbery could be conducted and whom they could get to commit the robbery. They also tried to determine on which day of the week the most money would be in the restaurant. The defendant told Cooper and Florentino that when they found someone to commit the robbery, they should let him know. The defendant also said that Sunday would be the best day to commit the robbery because all of the money received at the restaurant during the weekend would not yet have been taken to the bank.

Cooper subsequently approached his stepbrother, Ronald Canfield, and told him about the plan to rob Popeye's. Cooper asked Canfield to be the robber and told him that there was nothing to worry about because the manager was taking part in the scheme. Cooper said that the manager would be on the premises, and that he would not set off an alarm or call the police until at least five minutes after Canfield had left. Canfield agreed to commit the robbery, and Cooper and Florentino provided him with a ski mask, a pair of gloves, a shotgun and shells. According to Cooper and

Florentino, the manager knew that the robber would have a gun.

On March 3, 1991, at approximately 8:30 p.m., Canfield met Cooper and Florentino across the street from Popeye's. Canfield had arrived by bicycle. He was told to go to the rear door of Popeye's at 9 p.m. and to wait for one of the men to take out the garbage. At that time, he was to enter the premises and commit the robbery.

Canfield brought the shotgun, ski mask, gloves and a camouflage bag to the rear of Popeye's and waited in the bushes. He heard the rear door open and the scraping of a garbage can, and he saw Cooper and the defendant emerge from the restaurant. Cooper called out, "Ron, Ron," and the defendant said, "Hey" and "Yo, yo, anyone there?" The defendant also made a noise that sounded like "psst." Canfield said, "Yeah, I'm here," and the defendant saw Canfield and said to him, "Come on, let's go." Canfield grabbed the shotgun, put on the mask, and entered the restaurant behind Cooper and the defendant. Canfield was wearing a black leather jacket, blue dungarees and white sneakers.

When the three men entered the restaurant, Florentino was present. Cooper, Florentino and the defendant were smiling, and they directed Canfield to a room where Albert Jarrett was counting the money. Canfield told Cooper, Florentino and the defendant to lie down on the floor, and he told Jarrett to stop counting and to give him all the money. Canfield had been told to put the employees into the freezer before leaving the premises, and so he ordered Cooper, Jarrett and Florentino into the freezer. While Canfield did this, the defendant stood near a sink smiling and nodding his head.

Canfield tossed the gloves into a mop closet, left the building, and discarded the ski mask and shotgun in the dumpster behind Popeye's. He started toward the place where he had stored his bicycle and was met by

a police officer. The officer displayed a gun and told Canfield to "freeze." Canfield fled and a chase ensued. As Canfield ran, the money fell out of his bag. Canfield then discarded the bag. He was apprehended and taken into custody. He told the police what had occurred and informed them that Cooper, Florentino, and the defendant were also involved in the scheme.

The defendant testified on his own behalf that he never agreed with anyone to rob Popeye's or to share in the proceeds of any robbery. The defendant said that Cooper mentioned in general terms that some day Popeye's might be robbed. The defendant asserted that he had told Cooper, "If it ever got robbed, you wouldn't get a fight out of me, because I know how Bridgeport is and all." He further claimed that he spoke with Florentino after his conversation with Cooper, and that Florentino denied knowing about an intended robbery.

According to the defendant, Cooper stated that he had obtained the services of a person who was willing to commit the robbery. The defendant asserted that he told Cooper that he was not interested, and that he wanted nothing to do with any robbery. He claimed that he never reported this conversation to the general manager because the general manager did not want to hear about any problems taking place at the restaurant. The defendant also admitted that he did not report this conversation to the owner of the franchise because he did not want to "go over [the] manager's head."

The defendant testified that just before the robbery took place, he had told Jarrett to cash out and had helped Cooper and Florentino to clean up. He also testified that he and Cooper went outside to empty the garbage, and that on the way back, Cooper told him that they were going to be robbed. According to the defendant, Cooper then called out, "Ron." The defendant testified that he said "Yo" in response to Cooper

as an expression of disbelief and as a way of calling Cooper's bluff.

The defendant testified that the gunman entered the restaurant and ordered Cooper, Florentino and the defendant to lie on the floor. The defendant said that he got up, ran out of the restaurant through an emergency door and called 911 from a pay telephone. He claimed that he told the operator that the restaurant had been robbed and that the robber would be carrying a yellow plastic sack. The jury found the defendant guilty and this appeal followed.

I

The defendant first claims that the trial court improperly failed to deliver an accomplice testimony instruction where the entire case against the defendant rested on the testimony of three confessed accomplices.

The defendant concedes that he did not file a request to charge concerning the suspect nature of accomplice testimony, and that he did not take exception to the trial court's failure to give such an instruction. Thus, the defendant has not properly preserved this claim. Practice Book § 852.[3] The defendant does not assert that the failure of the trial court to deliver an instruction regarding accomplice testimony deprived him of a constitutional right, nor would such a claim benefit him because our Supreme Court has determined that the failure to give such an instruction does not implicate a constitutional right. *State* v. *Brown*, 187 Conn. 602, 613, 447 A.2d 734 (1982). The defendant posits that the

---

[3] Practice Book § 852 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

failure of the trial court, sua sponte, to give such an instruction, is reviewable under the plain error doctrine.[4] We are unpersuaded.

"Because he did not file a written request for this instruction or take an exception to the instruction on credibility as given, we can review the defendant's claim only if it constitutes plain error [which we notice 'in the interest of justice']. Practice Book § 4185. Review under the plain error doctrine is granted only in extraordinary situations where the error is so obvious that it affects the fairness and integrity of public confidence in the judicial proceeding. *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985).

" 'Whether in the interest of justice we notice this failure to give the accomplice instruction as plain error depends in part on whether the failure was harmful. The failure to give the accomplice instruction would be harmful only if the absence of this instruction was likely to have affected the jury's verdict.' *State* v. *Brown*, [supra, 187 Conn. 613]. Because the failure to give the accomplice instruction does not violate a constitutional right, it is the defendant's burden to show its harmfulness." *State* v. *King*, 35 Conn. App. 781, 794, 647 A.2d 25 (1994), aff'd, 235 Conn. 402, 665 A.2d 897 (1995).

We conclude that the claim of the defendant is not entitled to plain error review. Although it is the duty of the trial court to instruct the jury to scrutinize the testimony of an accomplice when the evidence so warrants; *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992); we conclude that the failure to give such an instruction here was not so harmful that it was likely

---

[4] Practice Book § 4185 provides in pertinent part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

to have affected the jury's verdict. See *State* v. *Brown*, supra, 187 Conn. 612–14.

We base our conclusion on several factors. First, we look to the balance of the trial court's instructions regarding credibility. In its instructions, the trial court generally indicated to the jury that it could view the testimony of any witness as less credible than that of any other witness. The trial court instructed the jury that a witness' felony conviction is a factor that the jury could weigh in assessing the credibility of that witness. The trial court further instructed the jury that it might not accept the testimony of a person previously convicted of a serious crime as readily as it might accept another person's testimony. Here, the only witnesses who were convicted felons were the three accomplices. The trial court also instructed the jury that, when making a determination as to the credibility of a witness, it could take into account any interest in the outcome of the case, prejudice, bias or sympathy that the witness might have. See *State* v. *Ruth*, 181 Conn. 187, 200, 435 A.2d 3 (1980). Thus, the trial court's instructions suggested that the accomplice witnesses' testimony may be viewed as suspect, and that the accomplices might have had an interest in distorting their testimony. See id.

Second, the lack of any indication that the accomplices had fabricated their accounts of the defendant's involvement in the robbery, and the consistency of the accomplices' testimony; see id; also lead us to conclude that the trial court's failure to give an accomplice instruction did not affect the jury's verdict. When Canfield was apprehended, he was asked by the arresting officer whether anyone else was involved in the commission of the robbery. Canfield responded that Cooper, Florentino and the defendant had been involved. Nothing in the evidence suggests that Canfield had an opportunity to concoct a story implicating the defendant because his inculpatory statement came immediately

following his arrest and before he had an opportunity to talk with his coconspirators. Moreover, Cooper, Florentino and Canfield were kept apart at the police station, and all three gave independent statements implicating the defendant in the planning and execution of the robbery. In addition, the record reflects that the accomplices' statements to the police on the night of the crime were consistent with their trial testimony.

Finally, nothing in the record suggests that any of the accomplice witnesses had received promises of leniency in exchange for testimony against the defendant, although defense counsel explored that possibility on cross-examination. At the time that each of the coconspirators testified against the defendant, each had pleaded guilty to various criminal offenses arising out of the robbery, and they had been sentenced as a result. Two of the accomplice witnesses had received ten year sentences suspended after five years, and one had received a ten year sentence suspended after four years. Each of the accomplice witnesses had served the unsuspended portion of his sentence and was then on probation. The accomplice witnesses were not required, as a condition of probation, to testify against the defendant.

All of these factors lead us to conclude that the trial court's failure to give an accomplice testimony jury instruction was harmless and was not likely to have affected the jury's verdict. Thus, it is unnecessary for us to notice plain error in this case. See *State* v. *Brown*, supra, 187 Conn. 613–14.

II

The defendant next asserts that the trial court improperly instructed the jury concerning its duty to draw inferences. The defendant posits that, consequently, the trial court "shifted" or "diluted" the state's burden of proof. We disagree.

Again, the defendant did not properly preserve this claim for appellate review. The defendant seeks review of this unpreserved claim pursuant to the well traveled path of *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 567 (1973), and *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant asserts that the trial court's allegedly improper instruction violated his due process rights under the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[5] Although we agree that he is entitled to review of this second unpreserved claim, we conclude that a constitutional violation does not clearly exist and did not clearly deprive the defendant of a fair trial.

In the course of its charge, the trial court stated: "In passing on the guilt of an accused person on the basis of circumstantial evidence you must be satisfied first that certain facts or circumstances exist and second that those facts and circumstances do beyond a reasonable doubt lead you to conclude that the crime was committed by the accused. Unless the existence of those facts or circumstances leads you as reasonable men and women to only one conclusion, namely that the accused is guilty, then, of course, you would not be justified in finding him guilty. But if you find those certain facts to have been proved that the only reasonable inference to be drawn from the existence of the facts is that the accused committed the crime charged, *then it is your duty to draw that inference and find him guilty.*" (Emphasis added.) The defendant claims that the effect of this portion of the charge was to shift or dilute the state's burden of proof. We are unpersuaded.

---

[5] "The defendant has failed to provide us with a separate analysis of his claim under the Connecticut constitution, and we therefore choose not to review this claim under the Connecticut constitution." *State* v. *Scarpiello*, 40 Conn. App. 189, 198 n.4, 670 A.2d 856 (1996). This does not mean, however, that we are not able to afford review of such a claim if we decide to do so. Id.

We once again set out our standard of review of a constitutional attack on the instructions of the trial court. "[T]he standard of review to be applied to the defendant's constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Prioleau*, 235 Conn. 274, 284, 664 A.2d 743 (1995).

Our review of the charge as a whole leads us to conclude that the trial court fully and fairly met its responsibility to instruct the jury in a manner that adequately guided the jury to a fair and just verdict. *State* v. *Patterson*, 35 Conn. App. 405, 417, 646 A.2d 258, cert. denied, 231 Conn. 930, 646 A.2d 254 (1994). Furthermore, when considered in the context of the charge as a whole, the isolated statement that the defendant attacks was not improper. Prior to making the allegedly improper statement, the trial court instructed the jury that it could not find the defendant guilty unless it found that the facts establishing such guilt were proven beyond a reasonable doubt. Next, the trial court simply instructed the jury that if the "*only* reasonable inference to be drawn" from the facts that had been proven beyond a reasonable doubt was "*that the accused committed the crime charged*," then it was the jury's "duty

to draw that inference and find him guilty." (Emphasis added.) This somewhat syllogistic statement merely informed the jury that if the only reasonable conclusion that it could reach was that the accused committed the crime charged beyond a reasonable doubt, then consequently, it was their duty as jurors to find the accused guilty. See *State* v. *Santiago*, 17 Conn. App. 273, 279, 552 A.2d 438 (1989). This statement, when viewed in the context of the charge as a whole, did not mislead the jury. We therefore conclude that the trial court's charge was not constitutionally deficient.

### III

Finally, the defendant asserts that the trial court improperly failed to relate the law to the facts of the case. The defendant posits that this failure deprived the defendant of the right to due process guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. We do not agree.

Once again, the defendant did not properly preserve his claim for appellate review, and he seeks review of his unpreserved claim under *State* v. *Evans*, supra, 165 Conn. 70, and *State* v. *Golding*, supra, 213 Conn. 239–40. Although we review this claim, we conclude that a constitutional violation does not clearly exist and did not clearly deprive the defendant of a fair trial.

We have already set forth in part II of this opinion our scope of review of constitutional challenges to jury instructions. To summarize briefly, we consider the charge as a whole to determine whether it is reasonably possible that the jury was misled. *State* v. *Prioleau*, supra, 235 Conn. 284.

"In reviewing whether the trial court *must* comment on any evidence that has been presented, we examine not only the entire jury charge, but also the presentation

of the issues to the jury by counsel in the context of the trial. Within constitutional limitations concerning trial by jury, the nature and extent of the trial court's comments on the evidence must largely depend on the facts involved in a particular case and the manner in which it has been tried. . . . The *wide discretion* a trial court has in its comments on the evidence may not require it to discuss particular items of testimony, particularly where issues were clearly delineated during the trial, where the arguments of counsel fairly presented the case and where there was no request to charge. . . . In a case where the trial court's charge contained no review of the evidence, [our Supreme Court] stated that [t]he issues were narrow, and the court made sufficient reference to them and to the claims of the parties adequately to guide the jury in the application of the principles of law to the facts involved. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Lemoine*, 233 Conn. 502, 511, 659 A.2d 1194 (1995).

Here, the issues presented were narrow and uncomplicated, and the trial court's instructions adequately guided the jury as to how to apply the law to the facts of the case. See id., 514. The defendant was charged in a single count with the commission of a single crime.[6] The elements of the crime with which the defendant stood charged, the claims of the parties and the evidence presented were not difficult to understand. The state's witnesses testified that the defendant was part of a conspiracy. The witnesses included a victim who was an employee, three coconspirators and police officers. The defendant claimed that he was not a participant in the conspiracy. No dispute existed as to whether a conspiracy existed or a robbery took place. The major issue was whether the defendant was a participant or a victim. Moreover, the final arguments of counsel

---

[6] See footnotes 1 and 2.

focused on the facts that each side claimed to have proven and constituted a thorough review of the factual predicates necessary to support each position.

Immediately following the final arguments of counsel, the trial court instructed the jury as to the law applicable to the crime charged. The court instructed the jury regarding general principles of law, including proof beyond a reasonable doubt, burden of proof and direct and circumstantial evidence, that a jury must consider in a criminal case. The trial court then correctly instructed the jury as to the elements that the state was obligated to prove in order to find the defendant guilty of the crime charged in the information.

The trial court, near the conclusion of its jury charge, indicated that "[b]ecause it has not been a long trial and I am sure you remember the evidence that's been presented, and it was reviewed extensively in counsels' argument, I have not reviewed it in my instructions." The trial court then explained to the jury that if the jury deemed it necessary, it was entitled to hear any of the testimony again or any part of the court's instructions. The trial court also advised the jury how to request the reading of testimony and instructions. On the basis of the foregoing review of the record, we conclude that the trial court did not abuse its discretion in limiting its review of the evidence. The trial court's jury instructions, when examined as a whole and in the context of the entire trial, correctly assisted the jury in applying the law. Thus, it is not reasonably possible that the jury was misled or that injustice to the defendant resulted from the trial court's instructions.

The judgment is affirmed.

In this opinion the other judges concurred.