## STATE OF CONNECTICUT *v.* MAURICE BILLIE
## (AC 15347)

Lavery, Hennessy and Dupont, Js.

Argued November 7, 1997—officially released February 17, 1998

*James B. Streeto*, special public defender, with whom, on the brief, was *Michael D. Quinn*, law student intern, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary Nicholson*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Maurice Billie, appeals from the judgment of conviction, rendered after a jury trial, of two counts of manslaughter in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-55,[1] one count of commission of a class A, B, or C felony with a firearm in violation of General Statutes § 53-202k, and one count of carrying a firearm without a permit in violation of General Statutes § 29-35.

On appeal, the defendant claims that the trial court improperly (1) struck the testimony of the defendant's expert witness regarding behavioral changes caused by the use of an intoxicant known as illy, (2) instructed the jury that it should draw an inference if the inference was reasonable and (3) denied the defendant's motion to suppress his confession. In addition, the defendant asks this court to declare General Statutes § 53-202k

---

[1] The defendant was charged in the long form information with two counts of murder in violation of General Statutes § 53a-54a. The jury returned a verdict of guilty on each of the two counts to the lesser included offense of manslaughter in the first degree.

unconstitutional as a violation of the separation of powers doctrine and as a cruel and unusual punishment, and to vacate his conviction under that statute.

The jury reasonably could have found the following facts. On September 3, 1994, the defendant spent the evening drinking alcohol and smoking marijuana and illy.[2] The next day, the defendant went to a cookout hosted by friends where he and two friends smoked "blunts."[3]

Later in the day, the defendant met his friend Andre Cinicola, who had a .40 caliber semiautomatic pistol in a shoulder holster. The defendant put on the holster and weapon and covered them with a leather jacket. The defendant agreed to purchase marijuana for Cinicola and two female friends. The defendant then borrowed a black Mazda Miata from Marquis Clark, and he and Cinicola drove to Congress Avenue in New Haven to purchase marijuana from curbside dealers. During this time, acquaintances of the defendant drove up in a gray Chrysler and told him and Cinicola that members of a gang known as the Stickup Boys were nearby driving in a blue Mustang. The Stickup Boys were a gang that had recently engaged in a shooting and robbing spree in the inner city neighborhoods and housing projects in the New Haven area. The occupants of the Chrysler stated that they intended to "get" the Stickup Boys and drove off to find them. The defendant and Cinicola followed.

Minutes later, the Chrysler and the Miata came upon a blue Mustang with tinted windows. Believing that the Mustang was occupied by the Stickup Boys, the drivers of the Chrysler and the Miata pulled behind the car,

---

[2] Illy is the street name for a drug consisting of a nonuniform mixture of phencyclidine (PCP), wood alcohol, methanol and formaldehyde.

[3] A blunt typically is a small cigar that is hollowed out and filled with illy and smoked in the manner of a marijuana cigarette.

and the occupants of the Chrysler fired several shots at the Mustang. The Mustang left at a high rate of speed up Sherman Avenue with the other two cars in pursuit. Attempting to overtake the Mustang, the other cars ran red lights and stop signs, traveling in excess of fifty miles per hour and swerving in and out of oncoming traffic.

The defendant positioned the Miata alongside the driver's side window of the Mustang. Cinicola took the pistol from the defendant and fired two shots at the Mustang. The pistol jammed and Cinicola attempted to clear the weapon while the pursuit continued. Cinicola fired two more shots at the Mustang. One of the bullets struck the driver in the head, either killing or incapacitating him instantly and causing him to lose control of the car. The Mustang crashed into a nearby office building. The defendant also lost control of the Miata, which jumped the curb and skidded sideways along the sidewalk until it collided with a utility pole located seventy feet from the Mustang. The last portion of the chase and shootout was observed by three New Haven police officers who were near the location of the car crashes.

The police officers found Cinicola on the sidewalk next to the Miata. The defendant was trapped in the driver's seat, and rescue personnel had to cut him out of the car before they could transport him to a hospital. Two passengers in the backseat of the Mustang had minor injuries and the two passengers in the front seat each suffered fatal gunshot wounds. The driver, George Goforth, was killed by a single gunshot wound to the head. The front seat passenger, Roshawnda Crenshaw, was killed by a single gunshot wound to the chest. Ballistics testing confirmed that the bullet that killed Crenshaw was fired from Cinicola's gun. The bullet that killed Goforth passed through his skull and was never recovered.

The murder weapon was recovered near the Miata and tests revealed Cinicola's left index fingerprint. Several shell casings were recovered and several live, unfired rounds were found in the passenger compartment of the Miata. No weapon was found in the Mustang, and evidence later revealed that the defendant knew all four occupants and was a close friend of the two who were killed and that none of them was connected to the Stickup Boys. The tinted windows of the Mustang had prevented the defendant and Cinicola from identifying the occupants of the Mustang.

I

The defendant first claims that the trial court improperly struck the testimony of the defendant's expert witness regarding behavioral changes caused by the use of illy. He argues that the striking of the testimony violated his right to present a defense under the sixth and fourteenth amendments to the United States constitution, and article first, § 8, of the Connecticut constitution. We are unpersuaded.

The following additional facts are necessary to our resolution of this claim. Over the objection of the prosecution, the defendant introduced the testimony of Jeremy August, a psychiatrist, on the general effects of the drug illy. During cross-examination, August testified that he was not testifying as to the effects of illy on the defendant in particular and that he had not reviewed the defendant's police reports or medical records. Defense counsel objected, stating that August "was not brought in here to testify about [the defendant but only] as an expert to testify about the effects of illy on individuals who ingest it . . . . not whether [the defendant] ingested it." The trial court then excused the jury and, over the defendant's objection, ordered the entire testimony of August stricken as irrelevant.

"The defendant's rights to confront and cross-examine witnesses and to present a defense do not give him the right to have admitted any evidence he chooses. *State* v. *Negron*, 221 Conn. 315, 328, 603 A.2d 1138 (1992). In the exercise of his rights, the defendant, as well as the state, must comply with the established rules of evidence and procedure. Id.; *State* v. *Kemp*, 199 Conn. 473, 479, 507 A.2d 1387 (1986). *State* v. *Boles*, 223 Conn. 535, 550, 613 A.2d 770 (1992)." (Internal quotation marks omitted.) *State* v. *Smith*, 46 Conn. App. 285, 291, 699 A.2d 250, cert. denied, 243 Conn. 930, 701 A.2d 662 (1997).

"[T]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the ruling involves a clear misconception of the law, the trial court's decision will not be disturbed. *State* v. *Campbell*, 225 Conn. 650, 654, 626 A.2d 287 (1993); *State* v. *Kemp*, [supra, 199 Conn. 476]; *State* v. *Palmer*, 196 Conn. 157, 166, 491 A.2d 1075 (1985); *Siladi* v. *McNamara*, 164 Conn. 510, 513, 325 A.2d 277 (1973); *Coffin* v. *Laskau*, 89 Conn. 325, 330, 94 A. 370 (1915). *State* v. *Esposito*, 235 Conn. 802, 834, 670 A.2d 301 (1996). Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 353–54, 696 A.2d 944 (1997).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. *Pitt* v. *Kent*, 149 Conn. 351, 357, 179 A.2d 626 (1962). One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. *State* v. *Blake*, 69 Conn. 64, 76, 36

A. 1019 (1897). . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. *State* v. *Kelly*, 77 Conn. 266, 269, 58 A. 705 (1904). A party is not required to offer such proof of a fact that it excludes all other hypotheses; it is sufficient if the evidence tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. *State* v. *Briggs*, [179 Conn. 328, 332, 426 A.2d 298 (1979), cert. denied, 447 U.S. 912, 100 S. Ct. 3000, 64 L. Ed. 2d 862 (1980)]. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. *State* v. *Miller*, [202 Conn. 463, 482, 522 A.2d 249 (1987)]; *State* v. *Morrill*, 197 Conn. 507, 548, 498 A.2d 76 (1985). . . . C. Tait & J. LaPlante, [Connecticut Evidence (2d Ed. 1988)] § 8.1.1, pp. 225–26. . . . *State* v. *Prioleau*, [235 Conn. 274, 305–306, 664 A.2d 743 (1995)]." (Internal quotation marks omitted.) *State* v. *Kiser*, 43 Conn. App. 339, 361–62, 683 A.2d 1021, cert. denied, 239 Conn. 945, 686 A.2d 122, cert. denied, 520 U.S. 1190, 117 S. Ct. 1478, 137 L. Ed. 2d 690 (1997).

The trial court improperly excluded the expert testimony of August. August should have been allowed to testify as to illy and its effect. He possessed a special knowledge of illy, not common to the average person, and his testimony would have aided the jury in considering the issue of intoxication. The relevant issue was whether the defendant was under the influence of illy and whether the intoxication affected his capacity to form a specific intent. Testimony concerning the composition of illy and its effect would have aided the jury in considering those issues. To exclude this testimony was an abuse of discretion.

"Whether a trial court's erroneous restriction of a defense witness' testimony in a criminal trial deprives a defendant of his due process rights is a question that must be answered on a case-by-case basis. *State* v. *Jones*, 205 Conn. 723, 731, 535 A.2d 808 (1988)." *State* v. *Flanders*, 214 Conn. 493, 500, 572 A.2d 983, cert. denied, 498 U.S. 901, 111 S. Ct. 260, 112 L. Ed. 2d 217 (1990). "The burden of proving the harmfulness of the error depends upon whether the error is merely evidentiary or is of constitutional magnitude. Where evidentiary error is claimed, the defendant bears the burden of proving the harmfulness of the error before a new trial will be granted. Where the claimed error is one of constitutional magnitude, however, the state must prove that the error is harmless beyond a reasonable doubt. *State* v. *Torres*, 210 Conn. 631, 642–43, 556 A.2d 1013 (1989)." *State* v. *Sauris*, 227 Conn. 389, 413, 631 A.2d 238 (1993).

"We have often held that the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved. . . . *State* v. *Vilalastra*, [207 Conn. 35, 46, 540 A.2d 42 (1988)]. Moreover, we have declined to attach constitutional significance to the erroneous admission of expert testimony concerning an ultimate fact. Id., 47. When a trial error in a criminal case does not involve a constitutional violation the burden is on the defendant to demonstrate the harmfulness of the court's error. *State* v. *Ruth*, 181 Conn. 187, [197], 435 A.2d 3 (1980). The defendant must show that it is more probable than not that the erroneous action of the court affected the result. Id.; *State* v. *McClain*, 171 Conn. 293, 300, 370 A.2d 928 (1976). *State* v. *Jones*, [supra, 205 Conn. 732]. *State* v. *Vilalastra*, supra, 47." (Internal quotation marks omitted.) *State* v. *Campbell*, supra, 225 Conn. 657.

The trial court properly instructed the jury as to the lesser included offense of manslaughter in the first degree. General Statutes § 53a-55.[4] The jury was further instructed that evidence of intoxication could be considered as to whether the defendant possessed the specific intent to cause serious physical harm under § 53a-55 (a) (1), but that evidence was not to be considered in determining whether the defendant possessed the general intent under § 53a-55 (a) (3). The jury found the defendant guilty of the lesser included offense of manslaughter in the first degree in violation of § 53a-55 (a) (1).

In determining whether the trial court error was harmless, we must determine whether the error complained of contributed to the verdict obtained. Although the trial court should have admitted August's testimony on the drug illy, the error did not affect the jury's verdict. If the jury had believed the additional evidence of intoxication[5] and concluded that the defendant was so intoxicated that he could not form the specific intent to cause serious bodily harm, the jury would have returned the same verdict of guilty of manslaughter in the first degree. The only distinction is that the jury would have returned a verdict under § 53a-55 (a) (3) instead of § 53a-55 (a) (1).[6] This distinction, however, is of no moment.

---

[4] General Statutes § 53a-55 provides in relevant part:"(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.

"(b) Manslaughter in the first degree is a class B felony."

[5] In addition to testimony from the defendant, two witnesses testified that they had smoked illy with the defendant and gave a general description of the drug's effect.

[6] It is noted that the jury was not instructed on any lesser included offenses other than first degree manslaughter in violation of General Statutes §§ 53a-55 (a) (1) and 53a-55 (a) (3).

Under either statutory provision, the defendant is guilty of manslaughter in the first degree. Cf. *State* v. *Dyson*, 217 Conn. 498, 503, 586 A.2d 610 (1991); *State* v. *Maselli*, 182 Conn. 66, 73, 437 A.2d 836 (1980), cert. denied, 449 U.S. 1083, 101 S. Ct. 868, 66 L. Ed. 2d 807 (1981); *State* v. *Delgado*, 8 Conn. App. 273, 274, 513 A.2d 701 (1986). It is irrelevant whether the defendant was found guilty under § 53a-55 (a) (1) or § 53a-55 (a) (3). Any error, therefore, is harmless.

II

The defendant next claims that the trial court improperly instructed the jury that it should draw an inference if the inference was reasonable. The defendant posits that, consequently, the trial court "shifted" or "diluted" the state's burden of proof. We disagree.

The defendant concedes that this claim is not properly preserved for appellate review and seeks review pursuant to *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[7] and the plain error doctrine. Practice Book § 4061. The defendant asserts that the trial court's allegedly improper instruction violated his due process rights under the fourteenth amendment to the United

---

[7] "Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. [*State* v. *Golding*, supra, 213 Conn. 239–40.] *State* v. *Graham*, 33 Conn. App. 432, 441–42, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986); see also *State* v. *Thurman*, 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987)." (Internal quotation marks omitted.) *State* v. *Harris*, 46 Conn. App. 216, 242–43, 700 A.2d 1161, cert. denied, 243 Conn. 930, 701 A.2d 662 (1997).

States constitution and article first, § 8, of the Connecticut constitution. "Since the record is adequate for review and the claim advanced implicates a fundamental constitutional right; see *Boykin* v. *Alabama*, 395 U.S. 238, 242–43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); the defendant has satisfied the first two prongs of *Golding*, and is entitled to a review of [his] unpreserved claim. *State* v. *Tangari*, 44 Conn. App. 187, 193, 688 A.2d 1335, cert. denied, 241 Conn. 901, 693 A.2d 304 (1997)." (Internal quotation marks omitted.) *State* v. *Chapman*, 46 Conn. App. 24, 29–30, 698 A.2d 347, cert. denied, 243 Conn. 947, 704 A.2d 800 (1997). We conclude, however, that a constitutional violation does not clearly exist and did not clearly deprive the defendant of a fair trial.

The following facts are relevant to the resolution of this claim. In the course of its charge, the trial court stated: "It is your duty to determine the facts and in so doing you should carefully consider and weigh the arguments [of] counsel as to the facts. In deciding the facts you must consider all the evidence and *it is your duty to draw such reasonable and logical inferences from such facts as you find proven.*" (Emphasis added.) Later in the charge, the court stated: "The only way in which a jury can determine what a person's intention was at any given time, aside from the man's own testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct and any statements made by that person and, from those, infer what his intention was. *To draw such an inference is not only the privilege but also the duty of the jury, provided, of course, the inference drawn is a reasonable inference.*" (Emphasis added.) The court subsequently repeated this instruction in response to a question from the jury.

First, we set out our standard of review of a constitutional attack on the instructions of the trial court. "[T]he standard of review to be applied to the defendant's

constitutional claim is whether it is reasonably possible that the jury was misled. . . . In determining whether it was indeed reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . *State* v. *Prioleau*, [supra, 235 Conn. 284]." (Internal quotation marks omitted.) *State* v. *Taheri*, 41 Conn. App. 147, 157, 675 A.2d 458, cert. denied, 237 Conn. 931, 677 A.2d 1374 (1996).

Our review of the charge as a whole leads us to conclude that the trial court fully and fairly met its responsibility to instruct the jury in a manner that adequately guided the jury to a fair and just verdict. See *State* v. *Patterson*, 35 Conn. App. 405, 419, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994). This court recently addressed a challenge to a similar instruction in *State* v. *Taheri*, supra, 41 Conn. App. 156. In *Taheri*, the trial court instructed the jury that "if you find those certain facts to have been proved that the only reasonable inference to be drawn from the existence of the facts is that the accused committed the crime charged, then it is your duty to draw that inference and find him guilty." Id. This court held that "[t]his somewhat syllogistic statement merely informed the jury that if the only reasonable conclusion that it could reach was that the accused committed the crime charged beyond a reasonable doubt, then consequently, it was their duty as jurors to find the accused guilty. See *State* v. *Santiago*, 17 Conn. App. 273, 279, 552 A.2d

438 (1989)." *State* v. *Taheri*, supra, 158. We find no meaningful distinction between the challenged instruction in the present case and the instruction in *Taheri*. Viewing the charge as a whole, we conclude that the statement did not mislead the jury and that no injustice has resulted.

### III

The defendant next claims that the trial court improperly denied his motion to suppress his confession. The defendant claims that he did not voluntarily, knowingly or intelligently waive his rights pursuant to *Miranda* v. *United States*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and, alternatively, that the confession was involuntary because it was induced by promises of leniency by the police. We are unpersuaded.

The following facts are necessary to our resolution of this claim. The trial court conducted a two day hearing on the defendant's motion to suppress. The court orally ruled on the motion and made the following findings of fact. "[O]n September 5 at about 9 p.m., the defendant was confined at Yale-New Haven Hospital for medical care. Three police officers, Detective [William] Piascyk, Detective Sergeant Howard and Detective [Daniel] Gleason went to Yale-New Haven Hospital to interview the defendant. A doctor at the hospital told them that they could speak to the defendant. The police then did speak to the defendant and at that time, based on their observations, he was not under the influence of any alcohol or drugs that would interfere with his ability to understand what they were telling him. At the time the police spoke to the defendant at the hospital he was . . . handcuffed to the bed. There were police officers stationed at the hospital to assure both the defendant's safety and that he would remain there. Clearly, the defendant was in custody and the questioning by the police was interrogation.

"At the time of the statement given by the defendant, which was taped, the defendant was twenty-four years old. He had completed tenth grade education. He had two prior convictions and at the time that the statement was taken there were three criminal matters pending. The defendant was familiar with the criminal procedure involving arraignments and prior to taking the taped statement the police did read to him his rights. He was given a blue card which explained his *Miranda* rights. He signed it and dated it September 5, 1994. The defendant understood his *Miranda* rights and, understanding them, he waived those rights and the waiver was voluntary, knowing and intelligent. There was no threat or promise or coercion by the police. For the record, as part of the court's finding, the court does find that prior to taking the taped statement of the defendant, the police had already taken the taped statement of Andre Cinicola and prior to taking his taped statement they did play a portion of the taped statement of Andre Cinicola to the defendant, and it was subsequent to that that the defendant agreed to give a taped statement." The court subsequently denied the defendant's motion to suppress the confession.

"Whether the defendant has knowingly and intelligently waived his rights under *Miranda* depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. . . . Factors which may be considered by the trial court in determining whether an individual had the capacity to understand the warnings include the defendant's experience with the police and familiarity with the warnings . . . his level of intelligence, including his IQ . . . his age . . . his level of education . . . his vocabulary and ability to read and write in the language in which the warnings were given . . . intoxication . . . his emotional state . . . and the existence of any mental disease, disorder or retardation.

. . . *State* v. *Toste*, 198 Conn. 573, 580–81, 504 A.2d 1036 (1986)." (Internal quotation marks omitted.) *State* v. *Jones*, 44 Conn. App. 476, 481, 691 A.2d 14, cert. denied 241 Conn. 901, 693 A.2d 304 (1997).

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . Practice Book § 4061; *State* v. *Oquendo*, 223 Conn. 635, 645, 613 A.2d 1300 (1992); *State* v. *Kyles*, 221 Conn. 643, 660, 607 A.2d 355 (1992). [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . *State* v. *Colvin*, 241 Conn. 650, 656, 697 A.2d 1122 (1997)." (Internal quotation marks omitted.) *State* v. *Joyce*, 243 Conn. 282, 288, 705 A.2d 181 (1997).

"In analyzing the defendant's claim, this court must take the facts as found by the trial court unless those findings are clearly erroneous. . . . This court cannot retry the facts or reconsider the credibility of witnesses. . . . On appeal in a case involving the question of voluntariness, however, our deference to the trial court's findings on questions of this nature is qualified by the necessity of an independent examination of the entire record to determine whether the trial court's findings of voluntariness [are] supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Janice*, 20 Conn. App. 212, 216, 565 A.2d 553, cert. denied, 213 Conn. 811, 568 A.2d 795 (1989).

The trial court has broad discretion in evaluating the evidence and testimony presented before it. *State* v. *Sharpe*, 195 Conn. 651, 658–59, 491 A.2d 345 (1985). Upon review of the entire record, we cannot conclude that it was clearly erroneous for the trial court to find

that "[t]here was no threat or promise or coercion by the police" or that it was unreasonable for the trial court to have concluded that the defendant's waiver was voluntarily, knowingly and intelligently given.

## IV

Finally, the defendant asks this court to declare § 53-202k[8] unconstitutional as a violation of the separation of powers doctrine and as a cruel and unusual punishment, and to vacate his conviction under that statute.

This issue is controlled by *State* v. *Dash*, 242 Conn. 143, 698 A.2d 297 (1997). "[Section] 53-202k is a sentence enhancement provision and not a separate crime. Consequently, although the defendant's total effective sentence of [forty-five] years was proper, the judgment must be modified to reflect the fact that § 53-202k does not constitute a separate offense. Accordingly, the defendant is entitled to have his conviction under § 53-202k vacated." Id., 150.

The judgment is reversed in part and the case is remanded with direction to vacate the defendant's conviction under § 53-202k and to resentence the defendant to a total effective term of imprisonment of forty-five years in accordance with this opinion.

In this opinion the other judges concurred.

---

[8] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."